UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RENEE QUINTYNE,

Plaintiff,

-against-

KENNETH DALY, KEVIN SHINE, MARIA COUPE, NIKKI RAMBIS, JOSEPH DONNINI, ROBERT MURRAY, JOHN EDEL, and ST. THOMAS AQUINAS COLLEGE,

Defendants.

Case No. 1:25-cv-04865 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

*Pro se* Plaintiff Renee Quintyne ("Plaintiff" or "Quintyne") brings multiple federal and state discrimination and retaliation claims against her former employer, St. Thomas Aquinas College (the "College"), and various employees of the College (the "Individual Defendants" and, together with the College, "Defendants"). Defendants move to dismiss Plaintiff's complaint both for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and for failure to state a claim under Rule 12(b)(6). For the following reasons, the motion is GRANTED.

## BACKGROUND

### I. Relevant Facts

Plaintiff filed this action on June 10, 2025. *See* Dkt. 1 ("Compl." or the "Complaint"). The fact section of her pleadings is one paragraph long and states as follows:

> I verify that I was subjected to discriminatory actions under the guise of St. Thomas Aquinas College Reconstruction Program which targeted older women age 60+ in the provost office. I was also denied adequate accommodation despite making it known that I would not be able to take on additional work as I had been running an overburdened Institutional Research Office at the time and was still recovering from a heart attack. As a result on March 21, 2023 I was prematurily ordered to

> return to work in person full time and accused of not meeting work expectations of Kevin Shine and told that I had three weeks to do so or be fired. As a result I was subject to a hostile work environment and was retaliated against in the form of two suspensions, one at age 62 and another at age 63. I was then threatened with a third suspension and termination. suspension at 63.

*Id.* at 6 (errors and incomplete final sentence *sic*).

Based on these facts, Plaintiff asserts claims against Defendants for race and sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; disability discrimination under the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 *et seq.*; disability discrimination under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; and discrimination — presumably age, race, gender, and disability discrimination, though the Complaint does not expressly say so — under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.* *Id.* at 3, 5. In connection with her disability claims, Plaintiff identifies as a "Heart Attack and WTC Survivor." *Id.* at 5. In connection with all her claims, Plaintiff alleges failure to accommodate, retaliation, and harassment or hostile work environment as the adverse employment action she faced in the workplace. *Id.* at 6.

Although the Complaint itself contains no factual allegations beyond the paragraph quoted above, it notes that Plaintiff filed two discrimination charges with the United States Equal Employment Opportunity Commission ("EEOC") and received right-to-sue notices on August 20, 2024, and March 27, 2025. *Id.* at 7. Plaintiff has attached to the Complaint a discrimination complaint she filed with the New York State Division of Human Rights (the "Division"), *see id.* at 35-42, which is signed May 11, 2023, *id.* at 40, and which was dual-filed with the EEOC, *see id.* at 40 (Division Complaint signature page containing attestation, "By filing this complaint, I understand that I am also filing my employment complaint with the United States Equal

Employment Opportunity Commission under the [ADA] . . ., Title VII . . ., and/or the [ADEA].”). She has also attached the Division’s March 29, 2024 no-probable-cause determination regarding that complaint, *id.* at 206-209; the College’s position statement to the EEOC and Plaintiff’s response, *see id.* at 16-33 (Plaintiff’s response); *id.* at 43-50 (the College’s statement); the College’s position statement to the Division, *see id.* at 55-69; the EEOC’s July 30, 2024 right-to-sue letter, *see id.* at 53; and the EEOC’s March 27, 2025 right-to-sue letter, *see id.* at 9.[1] The Court outlines, below, the allegations Plaintiff raised to those administrative bodies.

### A. The Complaint to the Division and EEOC

In May 2023, Plaintiff filed her complaint with the Division, which, as noted, was dual-filed with the EEOC. *See id.* at 40; *see also id.* at 35-40. In that complaint, Plaintiff alleged that she had worked as the Director of Institutional Research at the College “for over 12 years,” and that she had “received good evaluations, and many accolades for work done” in that time. *Id.* at 38. In 2020, however, the College hired Kenneth Daly as its new president, and Daly thereafter “hired his friend” Kevin Shine as CIO. *Id.* Soon after, Daly and Shine stripped Plaintiff of her administrative assistant and transitioned Plaintiff to work in the College’s IT department, reporting to Shine. *Id.* This led to “a lot of stress” for Plaintiff, who had to “learn[] a completely

[1] The Court takes judicial notice of the EEOC and Division filings and determinations, which, because they are “records of administrative proceedings, may properly be relied on in connection with this Court’s review of [a Rule 12(b)(6)] motion.” *Cole v. Cent. Park Sys., Inc.*, No. 09-cv-03185 (RRM) (CLP), 2010 WL 3747591, at *3 (E.D.N.Y. Sept. 20, 2010) (taking judicial notice of both Division and EEOC filings and determinations); *see also Rosich v. La Salle Acad.*, No. 24-cv-09183 (JLR), 2025 WL 2410596, at *1 n.2 (S.D.N.Y. Aug. 20, 2025) (same); *Scarborough v. U.S. Sec. Assocs., Inc.*, No. 19-cv-02037 (DLC), 2019 WL 3369456, at *1 (S.D.N.Y. July 26, 2019) (taking judicial notice of pro se plaintiff’s Division complaint on motion for judgment on the pleadings); *Evans v. N.Y. Botanical Garden*, No. 02-cv-03591 (RWS), 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002) (taking judicial notice of plaintiff’s Division complaints and Division’s Determinations and Order After Investigation on motion to dismiss).

new programming language" simply because Shine "was most familiar with it," in addition to completing "all the work [she] had been responsible for prior to [Shine's] arrival." *Id.* "The stress of it all" caused Plaintiff to "hav[e] a heart attack on June 15[], 2022." *Id.*

After becoming her supervisor, Shine allegedly gave Plaintiff a mid-year performance evaluation, "instead of the usual annual evaluation," and in it "he attempted to portray [Plaintiff] as an incompetent employee." *Id.* Shine made additional "baseless accusations about [Plaintiff's] work performance while [she] was still sick and also during [her] recovery period," all in an effort to justify her eventual termination. *Id.* Shine's "tactics" to achieve this goal included "[t]wisting" Plaintiff's words, "[g]iving [her] vague and generalized assignments," "[o]utright false accusations," "[h]umiliating [her]," "[d]emoting [her] but letting [her] keep [her] title," overcomplicating the disability accommodation process and later revoking the accommodations Plaintiff was granted, "[p]ostpon[ing] [Plaintiff's] annual working contract," accusing Plaintiff of storing certain "datasets" in the "unsafe location" of "[her] home computer," "[p]utting [Plaintiff] on a . . . Performance Improvement Plan [(the "PIP")]," and suspending Plaintiff "for one week without pay." *Id.* Plaintiff alleged that her suspension was retaliation for her request that the College communicate with her in writing regarding the PIP rather than require her to attend an in-person meeting; she alleged that she "did not attend the HR meeting" apparently scheduled for that purpose, and the College "termed it insubordination and suspended [her] without pay." *Id.* at 39.

Plaintiff's complaint to the Division and EEOC tied her allegations to her age, race, sex, *see id.* at 36 (checking these three boxes as the "basis of alleged discrimination"), and disability, *see id.* at 37 (checking box alleging discrimination based on "[d]eni[al] [of her] request for an accommodation for [her] disability"). Indeed, Plaintiff explained that she believed Shine treated her poorly "due to [her] age, race, and gender, mainly because [she was] unaware of any other

dismantling of offices in the school the way [hers] was," she was "unaware of anyone else experiencing the ridicule, numerous trips to the HR office, and the continual humiliation of disingenuous lies told at each sitting," and she was further "unaware of anyone having such stressful difficulty securing an accommodation." *Id.* at 39. Regarding "[d]isability," Plaintiff "strongly fe[lt] that the above tactics were sped up after [her] heart attack to pressure [her] into" leaving her position, whether by going on long-term disability, retiring, or quitting. *Id.* And with respect to her requested accommodations — which Plaintiff did not appear to specify, but which the Division's determination clarified was permission to work from home part-time, *id.* at 207 — Plaintiff alleged that she "was given an exceedingly difficult and stressful time due to the extremely strict policies of the school." *Id.* She alleged that the accommodation the College granted her was less than what her doctor had recommended, and she appeared to allege that the College later revoked that accommodation because her doctor would not provide the requested updates. *See id.* ("My doctor had written the note for three months and felt that writing a note every month when she had specified a 3-month period was unreasonable. So, the [College] terminated the accommodation immediately.").

On March 29, 2024, after an investigation, the Division found that there was "no probable cause" for Plaintiff's claims of "age, race/color, sex, [or] disability" discrimination or retaliation. *Id.* at 206, 209. The Division held that "[t]he record show[ed] and [Plaintiff] d[id] not dispute . . . that she failed to attend required meetings[ and] objected to and refused to perform tasks requested of her," *id.* at 207, that Defendants "had raised concerns about [Plaintiff]'s low productivity . . . and her ability to complete tasks as instructed in a timely fashion" even before she had requested a work-from-home accommodation, *id.* at 207-08, and that Plaintiff "objected" to Defendants' requests for documentation to support her continued accommodation, *id.* at 208. The Division therefore dismissed the complaint. *Id.*

### B. The Complaints to the EEOC

As noted above, Plaintiff's complaint to the Division was dual-filed as a charge to the EEOC. *See id.* at 40.[2] On July 30, 2024, in connection with this first charge, the EEOC issued Plaintiff a right-to-sue letter in which it expressly "adopted the findings of the state or local fair employment practices agency that investigated [her] charge," that is, the Division. *Id.* at 53.

Plaintiff has not attached a copy of the second charge she submitted to the EEOC, but she has included the College's January 9, 2025 position statement to the EEOC in response to that charge, *see id.* at 43-50, as well as her February 20, 2025 statement in response to the College's position statement, *see id.* at 16-33. The College argued to the EEOC that Plaintiff's second charge was her attempt at "a second bite at the apple," *id.* at 43 (quotation marks omitted), and that, therefore, "the scope of the EEOC's investigation into [the second] [c]harge should be limited to those allegations which postdate the conclusion of the previous investigation and determinations," *id.* at 46 n.7.

Plaintiff's response to the College's position statement included a "Summary," in which she included many of the same allegations she raised against the College in her previous complaint to the Division (and, therefore, her first charge to the EEOC). *See id.* at 29-33. She

[2] In her brief in opposition to the instant motion to dismiss, Plaintiff represents that she first filed an EEOC charge on April 19, 2023, but then "tr[ied] to obtain faster relief" by filing the Division complaint on May 30, 2023. *See* Dkt. 27 at 5. Plaintiff further represents in her opposition brief that, at an August 28, 2023 EEOC interview in connection with the April-filed "charge," the agency told her that "she could not bring a charge with the EEOC because she had filed a complaint with the Division." *Id.* Although this suggests that there was an EEOC charge even before the Division complaint, Plaintiff's Complaint filed in this Court represents that she filed an "inquiry" with the EEOC on April 19, 2023. Compl. at 7. As the EEOC's website explains, an inquiry "is not the same as filing a charge," and it is the inquiry that typically precedes the EEOC interview, which is intended to "provide [the complainant] with sufficient information to determine whether to proceed with filing a charge of discrimination." *Filing a Charge*, U.S. Equal Emp. Opportunity Comm'n, https://www.eeoc.gov/field-office/newyork/charge (last visited Aug. 31, 2026). The Court reads the Complaint as using the correct terminology, and understands Plaintiff's first EEOC charge to have been the dual-filed Division complaint.

alleged that she had been moved out of her previous office "and placed under . . . Shine's IT office," and that her administrative assistant was "[re]moved from [her] supervision," *id.* at 29; the College had converted her typical one-year employment contract to a six-month employment contract, *id*. at 30; she was overloaded with new work but still expected to complete her existing assignments, *see id.*; she faced difficulty in securing accommodations from the College, and her doctor "refused" to provide a note each month to ensure the College would continue to provide the accommodation granted, *see id.*; Shine gave her "vague" instructions and had a "habit of saying one thing but writing another," *id.* at 30-31; the College "demoted" her but "allowed her to keep her title," *id.* at 31; and the College had suspended her "for not attending an in-person meeting with . . . Shine," *id.* at 32. Elsewhere in her response, Plaintiff alleged that she had received a six-month performance evaluation, *id.* at 20-21; that she had been placed on the PIP, *id.* at 22; and that Shine "made [her] feel like a criminal" for storing certain "school data on [her] home computer[]," *id.* at 25.

Plaintiff's response to the College's position statement also alluded to allegations that she did not raise — and, due to their timing, could not have raised — in her first charge. Pertinent here, she alleged that she had been suspended a second time "for not allowing" Shine to deliver her performance evaluation, *id.* at 32, and that she had received "threats of a 3rd suspension and 2 threats of termination." *Id.* at 33. The EEOC issued a second right-to-sue letter to Plaintiff on March 27, 2025. *Id.* at 12.

## II. Procedural History

Plaintiff filed this action on June 10, 2025. *See generally id.* Her Complaint named only the Individual Defendants. *See id.* at 1. However, because the Complaint asserted various employment discrimination claims and alleged that Plaintiff had previously filed EEOC charges against the College, the Court construed the Complaint as asserting the same claims against the

College and, on June 16, 2025, ordered that this action's caption be amended to add the College. *See* Dkt. 7.

On September 17, 2025, because ninety days had passed since Plaintiff filed the Complaint, but she had not filed proof that she had served the Complaint on Defendants, the Court ordered Plaintiff to show good cause, by October 22, 2025, why that service had not been made or, if it had been made, to demonstrate when and in what manner it had been made. *See* Dkt. 10. On October 1, 2025, before Plaintiff had responded to the Court's order, Defendants moved to dismiss the Complaint. *See* Dkt. 11, Dkt. 12 ("Br."). On October 12, 2025, Plaintiff filed proof that she had served four of the Individual Defendants on September 10, 2025, *see* Dkts. 16-19, and she requested an extension of time to serve the College and the remaining Individual Defendants, *see* Dkt. 20. On October 23, 2025, the Court granted Plaintiff an extension and ordered that she serve the remaining Defendants by October 29, 2025. Dkt. 21 at 3. In addition, because Plaintiff had yet to file an opposition brief to Defendants' motion to dismiss, the Court granted her an extension of time to do so to November 5, 2025. *Id.* In compliance with that order, on October 29, 2025, Plaintiff filed proof that she had served the remaining Defendants, Dkts. 23-26, and, on November 5, 2025, filed an opposition to Defendants' motion to dismiss, Dkt. 27 ("Opp."). On November 11, 2025, Defendants filed a reply. *See* Dkt. 28 ("Reply"). The motion is fully briefed.

## LEGAL STANDARD

Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate it." *AMTAX Holdings 227, LLC v. CohnReznick LLP*, 136 F.4th 32, 37 (2d Cir. 2025). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the

evidence that it exists." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted).

Under Rule 12(b)(6), a plaintiff's "complaint may be dismissed to the extent that it 'fail[s] to state a claim on which relief can be granted.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110 (2d Cir. 2010) (alteration in original) (quoting Fed. R. Civ. P. 12(b)(6)). On a motion seeking such dismissal, the Court "accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor." *Santos v. Medina*, 417 F. Supp. 3d 280, 285 (S.D.N.Y. 2019). However, the Court need not accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (Sotomayor, J.) (citation omitted). Rather, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Where the plaintiff is *pro se*, her complaint "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)); *accord Browne v. Arrow Sec.*, No. 24-cv-09788 (JLR), 2024 WL 5201653, at *1 (S.D.N.Y. Dec. 23, 2024). However, even *pro se* pleadings "must state a plausible claim for relief" beyond "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Caraballo v. Dep't of Corr. City of New York*, No. 22-cv-00971 (JLR), 2022 WL 16555313, at *2 (S.D.N.Y. Oct. 31, 2022) (first quoting *Hogan*, 738 F.3d at 515; and then quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)). Such pleadings "cannot withstand a motion to dismiss unless [they] contain factual allegations sufficient to raise a 'right

to relief above the speculative level.'" *Martinez v. Ravikumar*, 536 F. Supp. 2d 369, 370 (S.D.N.Y. 2008) (quoting *Twombly*, 550 U.S. at 545).

**DISCUSSION**

Defendants move to dismiss the Complaint on multiple grounds. First, Defendants argue that all of Plaintiff's claims under the NYSHRL are barred by the election of remedies doctrine, because she has "already pursued those claims before" the New York State Human Rights Division. Br. at 6-7. Second, Defendants argue that most of Plaintiff's federal claims are untimely because she did not file this action within 90 days of the first right-to-sue letter, and because her second EEOC charge was duplicative of her first EEOC charge. *Id.* at 8-10. Third, Defendants argue that Plaintiff's remaining allegations fail to state a claim under the federal statutes she invokes. *Id.* at 10-18. Fourth, Defendants argue that all of Plaintiff's claims against the Individual Defendants must be dismissed, because none of the statutes Plaintiff invokes permits individual liability. *Id.* at 18.[3] The Court addresses these arguments in turn.

**I. The NYSHRL Claims Are Barred**

The Court begins with Defendants' argument that Plaintiff's NYSHRL claims are barred by the election of remedies, because "[t]he election of remedies bar is jurisdictional," *Williams v. City of New York*, 916 F. Supp. 2d 517, 521 (S.D.N.Y. 2013) (quoting *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 187 (S.D.N.Y. 2011)), and "jurisdictional questions ordinarily must

[3] Defendants also move to dismiss the Complaint as to the College and certain Individual Defendants because, they argue, Plaintiff failed to serve those Defendants with process within 90 days of filing the Complaint. Br. at 5-6. That was a reasonable basis for dismissal at the time Defendants filed their motion to dismiss. As discussed, though, the Court later extended Plaintiff's time to serve those Defendants so that the matter could be heard on the merits, and she complied with that order. *See* Dkt. 10 (September 17, 2025 order noting Plaintiff's failure to serve); Br. (filed October 1, 2025); Dkt. 21 at 3 (October 23, 2025 order extending Plaintiff's time to serve); Dkts. 23-26 (reflecting timely service of Defendants in question). Accordingly, the service argument is now moot. Presumably for that reason, Defendants do not press it in their Reply.

precede merits determinations in dispositional order," *Mastafa v. Chevron Corp.*, 770 F.3d 170, 179 (2d Cir. 2014) (quoting *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 397 (2d Cir. 2009)). Plaintiff concedes that these claims are barred by the election of remedies doctrine, Opp. at 4, and this Court agrees.

Under the NYSHRL, "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . . unless such person had filed a complaint hereunder or with any local commission on human rights." N.Y. Exec. Law § 297(9). Thus, "claims, once brought before the [Division], may not be brought again as a plenary action in another court," and any appeal from the Division's determinations may be brought only in New York Supreme Court. *York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 127 (2d Cir. 2002); *accord Joseph v. Westchester Cnty. Dep't of Cmty. Mental Health*, No. 20-cv-00420 (NSR), 2020 WL 2555334, at *1 (S.D.N.Y. May 19, 2020). This rule, known as the doctrine of election of remedies, "will bar any subsequent court proceedings," "[s]o long as substantially the same facts are involved . . . . The facts need not be perfectly identical, and merely adding some additional facts and/or re-labeling the claim will not prevent the application of the doctrine." *Edner v. NYCTA-MTA*, 134 F. Supp. 3d 657, 666-67 (E.D.N.Y. 2015) (quoting *DeBerry v. Brookdale Univ. Hosp. & Med. Ctr.*, 11 F. Supp. 3d 387, 392 (E.D.N.Y. 2014)); *accord Philbert v. City of New York*, No. 21-cv-03119 (PAE), 2022 WL 94574, at *9 (S.D.N.Y. Jan. 7, 2022); *see also Gerena v. 10 Sheridan Assocs. LLC*, No. 13-cv-06056 (CM), 2013 WL 5880567, at *3 (S.D.N.Y. Nov. 1, 2013) (finding election of remedies barred federal complaint even though plaintiff named additional corporate entity as defendant in federal complaint).

Plaintiff's complaint to the Division alleged a discriminatory demotion, a negative performance review, denial of her disability accommodation, and harassment. Compl. at 37

(checking off boxes for these types of discrimination). It also alleged age, race, sex, and disability discrimination. *Id.* at 36-37. Her Complaint before this Court likewise alleges discrimination based on age, race, sex, and disability. *Id.* at 3, 5. Her specific factual allegations before this Court are scant, but many of them overlap with her complaint to the Division. For example, Plaintiff alleges here that she was subjected to discrimination under the guise of restructuring at the College, that she was denied adequate accommodation, and that she was suspended from work. *Id.* at 6. These claims were all included in her complaint before the Division. *See id.* at 38-39 (alleging that Plaintiff was "transition[ed]" to work in IT under Shine and stripped of her administrative assistant, that the College overcomplicated the accommodation process and ultimately "revok[ed] the accommodation" it gave her, and that she was suspended for one week). The Division investigated these claims and dismissed them, on the merits, for lack of probable cause. *Id.* at 206-08. Plaintiff is therefore barred from raising them again here. *See, e.g.*, *Philbert*, 2022 WL 94574, at *10-11 (dismissing NYSHRL claims where "[plaintiff]'s claims against the individual defendants arise squarely from the incidents she detailed in her [Division] complaint"); *Joseph*, 2020 WL 2555334, at *2 (dismissing NYSHRL claims where plaintiff's complaint to the Division were "the same allegations [he] ma[de] in the complaint that he has filed in this [c]ourt"); *Higgins*, 836 F. Supp. 2d at 187-88 (dismissing NYSHRL claims where plaintiff's Division complaint "expressly included these claims" and Division "concluded after an investigation that there was no probable cause to believe such prohibited conduct occurred" (quotation marks and citation omitted)).

Although Plaintiff's complaint to the Division did not include allegations that she was suspended a second time, threatened with a third suspension, given a three-week ultimatum to "meet[] [Shine's] work expectations" or be fired, and otherwise threatened with termination, Compl. at 6, Plaintiff does not argue that these allegations fall outside the election-of-remedies

bar. To the contrary, she expressly concedes that *all* her NYSHRL claims here are barred. *See* Opp. at 4. But even if Plaintiff had sought to salvage these additional allegations, she would not have succeeded, because they arise out of the same facts Plaintiff presented to the Division — namely, that Shine and others at the College engaged in a discriminatory campaign designed to push her out of her job, which included demoting her, putting her on the PIP, postponing her annual contract, making "baseless accusations" about her work performance, and placing her on a one-week unpaid suspension. *See* Compl. at 38-39.

The New York Appellate Division, First Department, dealt with a similar issue in *Benjamin v. New York City Department of Health*, 870 N.Y.S.2d 290 (N.Y. App. Div. 2008). There, the plaintiff had filed a discrimination complaint with the New York City Commission on Human Rights, which found that the plaintiff's employer had disciplined her "based on substandard job performance," not discrimination. *Id.* at 291. At some point after filing her complaint with the Commission, the plaintiff was fired from her job. *Id.* She later sued the employer for discrimination in state court and, in arguing that her claims were not barred by the election of remedies doctrine, contended that "she did not and could not have asserted a retaliatory firing claim before the Commission because she was not fired until after she had filed her complaint with the Commission." *Id.* at 292. The Appellate Division rejected the argument, reasoning that "the Commission did investigate [the plaintiff's other] claims of retaliatory discipline and found them without merit," and that the plaintiff's new claim of retaliatory termination "was simply the culmination of the disciplinary process that the Commission found to have been based on substandard work performance." *Id.* Likewise, in *Carrington v. City of New York Human Resources Administration*, No. 155076/2024, 2024 WL 4984264 (N.Y. Sup. Ct. Dec. 4, 2024), the New York Supreme Court held that the plaintiff's discrimination lawsuit was barred because it "merely reiterate[d] allegations previously presented" to the Division. *Id.*

at *2. Even though the new suit included allegations of "retaliatory actions after [the plaintiff] filed [his previous] complaints with the [Division]," *id.* at *1, those actions — namely, new "disciplinary charges," *id.* at *3 — "were a continuation" of the "suspension and subsequent disciplinary review" that the Division had already investigated and dismissed, *id.* at *3.

So too here. Plaintiff's new allegations of additional suspensions and threats of termination fit well within the allegations of discriminatory and retaliatory adverse employment actions that she raised in her complaint to the Division, which the Division investigated and dismissed on the merits as rooted in Plaintiff's job performance rather than discrimination. *See* Compl. at 206-09. Indeed, the additional suspensions and threatened termination alleged here are "nothing more than the culmination of [Defendant]'s allegedly unlawful practice," *Vasquez v. City of New York - Off. of Mayor*, No. 22-cv-05068 (HG) (VMS), 2024 WL 1348702, at *13 (E.D.N.Y. Mar. 30, 2024) (quoting *Skates v. Inc. Vill. of Freeport*, No. 15-cv-01136 (SJF) (AYS), 2016 WL 1459659, at *21 (E.D.N.Y. Jan. 28, 2016), *report and recommendation adopted*, 2016 WL 1452391 (E.D.N.Y. Apr. 12, 2016)), which Plaintiff alleged was wholly intended to end with her ouster. *See, e.g.*, Compl. at 38 (allegations in Division complaint that Shine and the College used "several tactics" to "justify firing" Plaintiff, including the PIP meant "as a segway for . . . termination"). Accordingly, they too are barred by the election of remedies doctrine. Therefore, and as Plaintiff concedes, Plaintiff's NYSHRL claims are barred, and are accordingly dismissed.

## II. The Federal Claims Are Mostly Time-Barred

Defendants next argue that most of Plaintiff's federal claims are time-barred, because she did not file this action within ninety days of receiving her right-to-sue letter — instead, she filed it on June 10, 2025, and, Defendants contend, the relevant right-to-sue letter is the one dated July 30, 2024, with respect to Plaintiff's first EEOC charge. *See* Br. at 8-10. Plaintiff argues that the

ninety-day period for all her claims should run from March 27, 2025, the date of the right-to-sue letter she received with respect to her second EEOC charge. Opp. at 4-5. The Court agrees with Defendants.

"[A] Title VII plaintiff generally must . . . file an action in federal court within 90 days of receiving a right-to-sue letter from the agency." *Duplan v. City of New York*, 888 F.3d 612, 621-22 (2d Cir. 2018); *accord Asemota v. City of New York*, No. 24-cv-07793 (LAP), 2025 WL 2662301, at *9 (S.D.N.Y. Sept. 16, 2025). The same applies to plaintiffs suing under the ADA, ADEA, and Rehabilitation Act. *See Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011) (ADA); *Ko v. JP Morgan Chase Bank, N.A.*, 730 F. App'x 62, 63 (2d Cir. 2018) (summary order) (ADEA); *Boos v. Runyon*, 201 F.3d 178, 181 (2d Cir. 2000) (Rehabilitation Act). "[A] right to sue letter is normally assumed to have been received three days after its mailing, and to have been mailed 'on the date shown on the notice.'" *Dawes v. City Univ. of New York*, 193 F. App'x 59, 61 (2d Cir. 2006) (summary order) (quoting *Sherlock v. Montefiore Med. Ctr.*, 84 F. 3d 522, 525-26 (2d Cir. 1996)); *accord LaFontant v. Neale*, No. 18-cv-00023 (KMK), 2019 WL 1953942, at *5 n.2 (S.D.N.Y. May 2, 2019). Failure to sue within that time "is fatal to the claim unless subject to equitable tolling." *Ko*, 730 F. App'x at 63; *accord Spencer v. Securitas Sec. Servs. USA, Inc.*, No. 25-cv-07006 (DEH) (VF), 2026 WL 2056691, at *3 (S.D.N.Y. May 26, 2026), *report and recommendation adopted*, 2026 WL 2030796 (S.D.N.Y. July 14, 2026).

Where a plaintiff receives multiple right-to-sue letters, and the second is "based upon a charge involving exactly the same facts as the first," the 90-day period is measured "with reference to only the first Notice of Right to Sue," as otherwise "plaintiffs could evade [the statutory timing] requirements simply by seeking additional Notices of Right to Sue whenever they pleased." *Lo v. Pan Am. World Airways, Inc.*, 787 F.2d 827, 828 (2d Cir. 1986) (per

curiam); *accord Melie v. EVCI/TCI Coll. Admin.*, 374 F. App'x 150, 152 (2d Cir. 2010) (summary order). For example, in *Jackson v. City of New York*, No. 10-cv-07889 (RMB), 2013 WL 541510 (S.D.N.Y. Feb. 14, 2013), the plaintiff "initiated a series of complaints" against his employer to the Division, and in the first and third of these, he alleged that his supervisor and others had referred to him using a racial epithet. *Id.* at *1-2. The EEOC issued a right-to-sue letter on both Division complaints (presumably because, like Plaintiff's here, the complaints were dual-filed with the EEOC). *Id.* at *4-5. The plaintiff later filed a federal action against his employer alleging, among other things, hostile work environment under Title VII based on the same racial epithet claim. *Id.* at *5. The court held that, because the plaintiff "asserted identical hostile work environment claims in his first and third" Division complaints, the first right-to-sue letter "control[led]," and the plaintiff's federal suit on the same hostile work environment claims was barred because he had not filed it within 90 days of that first letter. *Id.*

The same logic applies here. While Plaintiff has not attached a copy of her second EEOC charge, she has attached the College's position statement on that charge and her response to it. *See* Compl. at 16-33, 43-50. As the Court discussed in Section I.B. of the Relevant Facts, *supra*, the parties' arguments in those filings demonstrate that Plaintiff's allegations in the second charge are identical to those in the first, aside from allegations of an additional suspension and threats of suspension and termination. Indeed, Plaintiff does not dispute that her second charge "largely reiterat[ed] the claims from [her] previous EEOC [c]harge." Opp. at 4 (characterizing, but not contesting, Defendants' argument). Therefore, to the extent Plaintiff brings federal claims against Defendants in this action based on allegations that the College's workplace restructuring was a pretext for discrimination, that she was denied adequate accommodation, and that Defendants discriminated or retaliated against her by putting her on a one-week unpaid suspension, *see* Compl. at 6, she was required to assert those claims within 90 days of receiving

the right-to-sue letter with respect to her first EEOC charge, dated July 30, 2024. She did not do so, and accordingly those claims are dismissed as time-barred.[4]

That leaves Plaintiff's allegations of additional suspensions and threats of suspension and termination (the "Remaining Allegations"), which were not contained in the first charge and are therefore, arguably, not subject to the ninety-day period triggered by the July 30, 2024 right-to-sue letter. Defendants concede that the Remaining Allegations are not time-barred, *see* Br. at 10, though they argue that because Plaintiff's second EEOC charge did not contain "any reference to the[se] alleged threats," Plaintiff cannot premise this action on those threats, because she has not exhausted her administrative remedies by first presenting them to the EEOC, *id.* at 10 n.4. The Court disagrees, in part because it appears that Plaintiff did raise the Remaining Allegations to the EEOC — at the very least, she discussed them in her response to the College's position statement on her second charge. *See* Compl. at 33 ("I was subject to two suspensions without pay, respectively at . . . age 62 and age 63, threats of a 3rd suspension and 2 threats of termination."); *see also id.* at 47 (College's position statement discussing Plaintiff's additional suspension). However, even if Plaintiff's position statement raised additional allegations not included in her second charge, the Court still disagrees with Defendants that she has not exhausted her administrative remedies for the Remaining Allegations, because they are reasonably related to the other allegations in her second charge.

"As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Buon v. Spindler*, 65 F.4th 64, 77 (2d Cir. 2023) (quoting *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003)); *see*

---

[4] Even if Plaintiff received this right-to-sue letter on August 20, 2024, as she alleges, and not within the presumed three days after its mailing, her June 2025 Complaint would still fall outside the 90-day period established.

*Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018) (holding same for ADA); *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (same for ADEA); *Boos*, 201 F.3d at 181 (same for Rehabilitation Act). "However, 'claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency.'" *Buon*, 65 F.4th at 77 (quoting *Deravin*, 335 F.3d at 200). "Reasonably related" claims include those that "would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination,'" as well as those of "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402-03 (2d Cir. 1993) (quoting *Smith v. Am. President Lines, Ltd.*, 571 F.2d 102, 107 n.10 (2d Cir. 1978)), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1072, *as recognized in Duplan*, 888 F.3d at 622. A same-manner incident post-dating the filed EEOC charge falls within "the 'values associated with exhaustion . . . because the EEOC would have had the opportunity to investigate, if not the particular discriminatory incident, the method of discrimination manifested in prior charged incidents.'" *Kirkland-Hudson v. Mt. Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 442 (S.D.N.Y. 2023) (quoting *DeBerry*, 11 F. Supp. 3d at 393-94). Ultimately, courts reviewing claims for reasonable relatedness "focus on 'the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.' The central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both [the included and not-included] bases.'" *Dreyer v. U.S. Dep't of Just.*, No. 23-cv-09407 (MKV), 2025 WL 896497, at *8 (S.D.N.Y. Mar. 24, 2025) (first quoting *Deravin*, 335 F.3d at 201; and then quoting *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 158 (2d Cir. 2008)).

Plaintiff's EEOC charges allege a course of conduct in which Shine and others at the College, motivated by discrimination, attempted to force her out of her job through various means. One of those means was an unpaid, one-week suspension. Compl. at 32; *see id.* at 38. Plaintiff's second-charge allegation that Shine or others at the College suspended her again and threatened her with an additional suspension is reasonably related to that claim. *See, e.g.*, *Kirkland-Hudson*, 665 F. Supp. 3d at 443 (finding that "allegations that [p]laintiff was excluded from meetings and emails are reasonably related to [p]laintiff's EEOC allegation that she was prevented from attending a union meeting"). Similarly, post-charge threats to fire Plaintiff are reasonably related to the course of conduct Plaintiff alleged in her second EEOC charge — a course of conduct that, Plaintiff alleged, was all "pretext [that] would eventually legitimize" her termination. Compl. at 31; *see also id.* at 32 (alleging that Shine and the College "allow[ed] the situation to escalate resulting in two suspensions," and that "their agenda was intentionally planned and by design they carried out age [and] gender [discrimination] and retaliatory practices"). *See, e.g.*, *Dreyer*, 2025 WL 896497, at *9 (finding plaintiff's new termination allegation reasonably related to EEOC-filed suspension allegation where the "termination effectively finalized" the suspension, and where the employer "appear[ed] to have suspended [plaintiff] and terminated her for the same purported reasons"); *Shums v. N.Y.C. Dep't of Educ.*, No. 04-cv-04589 (DLI) (LB), 2006 WL 8437471, at *6 (E.D.N.Y. Apr. 3, 2006) (finding new termination allegation reasonably related to EEOC-filed allegation as to disciplinary hearings, because the latter "were conducted with possible termination in mind"); *Shepheard v. City of New York*, 577 F. Supp. 2d 669, 678-79 (S.D.N.Y. 2008) (finding new termination allegation reasonably related to EEOC charge where plaintiff "was terminated as a result of various disciplinary charges, which were related to her sick leave," and EEOC charge included allegations "concern[ing] [plaintiff]'s sick leave and the [employer]'s conduct with respect to

such leave"), *aff'd*, 360 F. App'x 249 (2d Cir. 2010) (summary order); *cf. Bernard v. Care Design N.Y.*, No. 20-cv-01527 (LJL), 2022 WL 4484556, at *9 (S.D.N.Y. Sept. 27, 2022) (finding new termination allegation not reasonably related to EEOC-filed failure-to-promote allegation where plaintiff's "termination . . . did not involve conduct or persons that took place in the same manner as the failure to promote").

Therefore, Plaintiff may bring federal discrimination and retaliation claims in this Court based on the Remaining Allegations (*i.e.*, her second suspension and threats she received of an additional suspension and termination), despite the exhaustion requirement.

## III. The Individual Defendants Are Dismissed

Defendants next argue that all of Plaintiff's federal claims against the Individual Defendants must be dismissed, because none of the statutes Plaintiff invokes — Title VII, the ADEA, or the ADA — permits individual liability. *See* Br. at 18. Plaintiff concedes that all her claims against the Individual Defendants must be dismissed for this reason, *see* Opp. at 8, and the Court agrees that these statutes do not permit individual liability, *see Yerdon v. Poitras*, 120 F.4th 1150, 1156 (2d Cir. 2024) ("Title VII of the Civil Rights Act does not impose individual liability."); *id.* at 1155 (holding that there is no individual liability for discrimination or retaliation under the ADA); *Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011) (affirming dismissal of individual defendants from ADEA claim because that "statute [does not] subject[] individuals, even those with supervisory liability over the plaintiff, to personal liability"). Defendants appear to have omitted Plaintiff's claims under the Rehabilitation Act from their analysis, but that statute also does not permit individual liability. *See Goe v. Zucker*, 43 F.4th 19, 35 (2d Cir. 2022) ("It is well-established that there is no individual liability under . . . the Rehabilitation Act[.]" (alteration adopted) (citation omitted)); *accord Blanco v. Success Acad. Charter Schs., Inc.*, No. 23-cv-01652 (LJL), 2026 WL 1678098, at *17 n.13 (S.D.N.Y. June 10,

2026). Plaintiff's claims against the Individual Defendants under these statutes are, therefore, dismissed.

## IV. The Merits of the Remaining Allegations

Having resolved the foregoing preliminary issues, the Court now turns to the merits of Plaintiff's Remaining Allegations against the College under Title VII, the ADA, the ADEA, and the Rehabilitation Act. To the extent Plaintiff alleges discrimination and retaliation under these statutes, those claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *See Carr v. N.Y.C. Trans. Auth.*, 76 F.4th 172, 177-78 (2d Cir. 2023) (Title VII and ADEA discrimination and retaliation); *Jackson v. N.Y.C. Dep't of Educ.*, 768 F. App'x 16, 16-17 (2d Cir. 2019) (summary order) (ADA and Rehabilitation Act discrimination and retaliation); *accord Kho v. N.Y. & Presbyterian Hosp.*, 344 F. Supp. 3d 705, 717 (S.D.N.Y. 2018) ("Claims of discrimination brought under Title VII, the ADEA, ADA, and Rehabilitation Act are analyzed pursuant to the burden-shifting framework described in *McDonnell Douglas*."); *Atherley v. N.Y.C. Dep't of Educ.*, No. 23-cv-00383 (JGLC), 2024 WL 1345741, at *11 (S.D.N.Y. Mar. 29, 2024) ("Courts analyze retaliation claims under Title VII, the ADA, [and] Rehabilitation Act . . . pursuant to the *McDonnell Douglas* framework."). To the extent Plaintiff alleges hostile work environment under these statutes, *McDonnell Douglas* does not apply. *See, e.g.*, *Pape v. Dircksen & Talleyrand Inc.*, No. 16-cv-05377 (MKB) (SJB), 2019 WL 1435882, at *10 n.4 (E.D.N.Y. Feb. 1, 2019) (collecting Second Circuit cases "ma[king] clear that a hostile work environment claim is subject to" a different standard). For the following reasons, all these claims must be dismissed.

### A. The Discrimination Claims

At the pleading stage, the *McDonnell Douglas* framework requires a discrimination plaintiff to allege that she "is a member of a protected class, was qualified [for her position],

suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). Regarding the final prong, "[a]n inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in . . . degrading terms [with respect to plaintiff's protected group]; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Id.* at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). While discrimination plaintiffs often lack "direct evidence of discriminatory intent" at the pleading stage, *id.* at 311, they still must "assert enough nonconclusory factual matter to nudge [their] claim across the line from conceivable to plausible to proceed," *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208 (2d Cir. 2020) (alterations adopted) (quoting *EEOC v. Port Auth.*, 768 F.3d 247, 254 (2d Cir. 2014)). Plaintiff's surviving claims here rely on allegations that she was suspended from work when she was sixty-three years old, and that she was threatened with an additional suspension and termination. *See* Compl. at 6. These Remaining Allegations are insufficient to plead discrimination under the statutes on which Plaintiff sues.

First, these alleged threats of suspension and termination are not adverse employment actions. *See, e.g.*, *Bury v. Consumer Reports, Inc.*, 819 F. Supp. 3d 272, 284 (S.D.N.Y. 2026) ("Threats of termination . . . do not constitute an adverse employment action."); *Walker v. Metro N. Commuter R.R.*, No. 23-cv-09883 (JPO), 2024 WL 4266261, at *5 (S.D.N.Y. Sept. 23, 2024) ("A mere reprimand or threat of disciplinary proceedings without subsequent consequences is not a materially adverse employment action."); *Jain v. Tulino*, No. 22-cv-02751 (JGLC), 2025 WL 2774260, at *11 (S.D.N.Y. Sept. 29, 2025) (finding plaintiff failed to plead adverse action where he "received notice of potential disciplinary action for his work and other letters of

warning that directed [him] to complete his job duties without any further action by [the employer]"). Second, Plaintiff's second suspension may be an adverse employment action, *see, e.g.*, *Fabain v. Westchester Cnty.*, No. 24-cv-06482 (PMH), 2026 WL 507840, at *4 (S.D.N.Y. Feb. 24, 2026), assuming that, like the first, it was without pay. *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223-24 (2d Cir. 2001) (holding that one-week unpaid suspension, even if ultimately reimbursed, constituted adverse employment action). But Plaintiff's allegation of her age, alone, is insufficient to support a discrimination claim based on that second suspension. *See, e.g.*, *Williams v. N.Y.C. Dep't of Educ.*, No. 17-cv-01996 (AJN), 2018 WL 4735713, at *9 (S.D.N.Y. Sept. 29, 2018) ("That plaintiff is over 40 and experienced mistreatment at work is not, without more, enough to state a claim of age discrimination."); *Carmellino v. Dist. 20 of N.Y.C. Dep't of Educ.*, No. 03-cv-05942 (PKC), 2006 WL 2583019, at *31 (S.D.N.Y. Sept. 6, 2006) ("A plaintiff claiming age discrimination may not rely solely on his or her status as a member of a protected class and the fact that he or she experienced what might constitute an adverse employment action."); *Francis v. Elmsford Sch. Dist.*, No. 04-cv-02687 (HB), 2006 WL 1409487, at *5 (S.D.N.Y. May 23, 2006) ("The mere fact that plaintiff was in her sixties at the time of the challenged employment action, without more, does not give rise to an inference of age discrimination."), *aff'd*, 263 F. App'x 175 (2d Cir. 2008) (summary order). The same is true for Plaintiff's allegation of her disability status as a "Heart Attack and WTC Survivor,"[5] Compl. at 5, and her race and sex, even though she has not explicitly alleged either, *id.* at 3. *See, e.g.*, *Ochei v. The Mary Manning Walsh Nursing Home Co., Inc.*, No. 10-cv-02548 (CM) (RLE), 2011 WL 744738, at *3 (S.D.N.Y. Mar. 1, 2011) ("[N]aked assertions by plaintiff that some protected demographic factor motivated an employment decision, without a fact-

[5] For purposes of this Opinion, the Court assumes, without deciding, that these are both disabilities within the meaning of the ADA and Rehabilitation Act.

specific allegation of a causal link between defendant's conduct and the plaintiff's membership in a protected class, are simply too conclusory to withstand a motion to dismiss.").

For these reasons, Plaintiff fails to plead a prima facie case for discrimination under Title VII, the ADA, the ADEA, or the Rehabilitation Act, and her claims under those statutes are dismissed.

### B. The Retaliation Claims

Plaintiff also alleges retaliation under all the same statutes. *See* Compl. at 6. "[T]o establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) she engaged in protected activity, (2) the defendant was aware of that activity, (3) she was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions." *Carr*, 76 F.4th at 180; *see also id.* at 174 (noting that plaintiff alleged retaliation under Title VII and the ADEA, among other statutes); *Smith v. N.Y.C. Dep't of Educ.*, No. 18-cv-08545 (PGG), 2019 WL 6307471, at *11 (S.D.N.Y. Nov. 25, 2019) ("Retaliation claims under the ADEA, the ADA, and the Rehabilitation Act are analyzed under the same framework that applies to retaliation claims under Title VII.").

Plaintiff's retaliation claims fail because she does not sufficiently allege that she engaged in a protected activity. Indeed, the Complaint contains no factual allegation at all as to what activity Plaintiff engaged in leading up to her second suspension. Plaintiff's position statement to the EEOC does contain such an allegation, but it does not clearly support her claim: There, Plaintiff alleged that the College suspended her a second time because she refused "to be evaluated by Kevin Shine after [she] had previously submitted a letter of complaint . . . citing [her] concerns regarding the evaluation." Compl. at 32. On its face, this allegation does not plead that Plaintiff engaged in a protected activity, because it fails to identify what Plaintiff's

letter of complaint was about — complaints to management may constitute protected activity, *see, e.g.*, *McKenna v. Santander Inv. Sec., Inc.*, No. 21-cv-00941 (DLC), 2022 WL 2986588, at *10 (S.D.N.Y. July 28, 2022), but only when the employee's complaint makes clear "that [s]he is complaining of unfair treatment because of membership in a [protected] class," *Kouassi v. N.Y.C. Dep't of Homeless Servs.*, No. 14-cv-07445 (RRM) (LB), 2017 WL 4342093, at *5 (E.D.N.Y. Sept. 25, 2017). Indeed, "[u]nfair treatment 'is not actionable under the civil rights laws,' and accusations of unfair treatment 'do not constitute protected activity. To be actionable, the unfair treatment must be due to one's membership in a protected class and the complaint must make that point sufficiently clear.'" *Ramirez v. Temin & Co.*, No. 20-cv-06258 (ER), 2021 WL 4392303, at *16 (S.D.N.Y. Sept. 24, 2021) (alterations adopted) (quoting *Ramos v. City of New York*, No. 96-cv-03787 (DLC), 1997 WL 410493, at *3 (S.D.N.Y. July 22, 1997)). Plaintiff's pleadings do not make clear that her "letter of complaint . . . citing [her] concerns regarding the evaluation," Compl. at 32, in any way tied her concerns to her age, gender, race, or disability status — which are the protected classes she invokes as bases for her retaliation claims before this Court — and they are therefore insufficient to state a claim for retaliation. *See, e.g.*, *Ramirez*, 2021 WL 4392303, at *15-16 (dismissing retaliation claim for failure to allege engagement in protected activity where plaintiff complained about supervisor hitting her hand while she carried coffee, but she "d[id] not allege that the coffee incident was related in any way to discrimination on the basis of [her] membership in a protected class"); *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 16 (2d Cir. 2013) (per curiam) (finding that plaintiff had not engaged in protected activity where "there [wa]s no indication either that [plaintiff] herself possessed a good-faith belief that she was complaining of conduct prohibited by Title VII or that her employers could have understood her complaints in this way"); *Williams v. Home Depot U.S.A., Inc.*, No. 02-cv-05353 (DAB), 2005 WL 2429421, at *14-15 (S.D.N.Y.

Sept. 30, 2005) (holding that complaint to employer about supervisor's management style was not protected activity); *Rosario v. City of New York*, No. 11-cv-09008 (PAC) (SN), 2013 WL 782408, at *11 (S.D.N.Y. Jan. 9, 2013) (collecting cases and explaining that "complaints are not protected activities when the plaintiff is not complaining about discrimination"), *report and recommendation adopted*, 2013 WL 782581 (S.D.N.Y. Mar. 1, 2013). Therefore, Plaintiff's retaliation claims are dismissed.

### C. The Hostile Work Environment Claim

Plaintiff also asserts a hostile work environment claim. *See* Compl. at 6. Defendants do not specifically argue that this claim should be dismissed or otherwise mention it, *see generally* Br.; Reply, but they do ask that Plaintiff's Complaint be dismissed "in its entirety and with prejudice," Br. at 19. The Court will dismiss this claim. *See, e.g.*, *Dickerson v. Mut. of Am.*, 703 F. Supp. 2d 283, 294 (S.D.N.Y. 2010) (dismissing claim that defendants did "not specifically address[]" where "the defendants have moved to dismiss or, in the alternative, for summary judgment with respect to the entirety of the plaintiff's complaint"); *Trivedi v. Gen. Elec. Co.*, No. 23-254-cv, 2024 WL 3286663, at *3 (2d Cir. July 3, 2024) (summary order) (affirming *sua sponte* dismissal of claims that "plainly lack merit").

A hostile work environment claim, whether brought under Title VII, the ADA, the ADEA, or the Rehabilitation Act, requires a "show[ing] that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn*, 795 F.3d at 320-21 (setting forth the Title VII standard) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see Figueroa v. Garland*, No. 21-cv-07849 (GHW), 2023 WL 4865831, at *8 (S.D.N.Y. July 31, 2023) ("The standard for pleading a hostile work environment claim under the Rehabilitation Act is the same as the standard under the ADA and Title VII."); *Perkins v.*

*U.S. Dep't of the Treasury*, No. 18-cv-08911 (NSR), 2022 WL 19772, at *15 (S.D.N.Y. Jan. 3, 2022) ("The standard for demonstrating a hostile work environment is the same under Title VII, the ADEA, and the Rehabilitation Act.").[6] Typically, courts analyze "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted," to determine "[w]hether the challenged conduct is sufficiently severe or pervasive." *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009) (quotation marks and citation omitted); *accord Sanderson v. Leg Apparel LLC*, No. 19-cv-08423 (GHW), 2020 WL 7342742, at *6 (S.D.N.Y. Dec. 14, 2020).

Plaintiff's Complaint simply contains no allegations of discriminatory intimidation, ridicule, or insult. As discussed, Plaintiff's Remaining Allegations of a second suspension, threats of additional suspensions, and threats of termination are unsupported by factual detail suggesting that those actions were tied to one of Plaintiff's protected groups; instead, Plaintiff conclusorily asserts that she was subjected to a hostile work environment based on those actions. *See* Compl. at 32-33 ("I confirm that discriminatory actions were carried out under the guise of the . . . College['s] reconstruction program and embedded in that program was an agenda to rid the [C]ollege of certain women age 60+. . . . I also affirm that I experienced and was subject to a

[6] The box on the complaint form that Plaintiff checked off states that Defendants "harassed [her] or created a hostile work environment." Compl. at 6. To the extent Plaintiff may be raising two separate claims, the Court analyzes them together, because a workplace harassment claim requires the same showing as a hostile work environment claim. *See Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012) (explaining that workplace harassment "must be sufficiently severe or pervasive — both subjectively and objectively — to alter the conditions of the victim's employment and create an abusive working environment" (alteration adopted) (citations omitted)); *accord Aponte v. Clinton St. Pizza Inc.*, No. 22-cv-03188 (KMW), 2023 WL 1795189, at *4 (S.D.N.Y. Feb. 7, 2023).

hostile and retaliatory environment due to [Defendants'] attempts to force me to stop working at [the] College."). In other words, "[P]laintiff's hostile work environment claim is based on little more than her use of that term itself. That is not enough to state a facially valid cause of action." *Gayles v. Roswell Park Cancer Inst. Corp.*, No. 22-cv-00750, 2023 WL 6304020, at *10 (W.D.N.Y. Sept. 28, 2023) (quoting *McCullough v. Xerox Corp.*, 942 F. Supp. 2d 380, 386 (W.D.N.Y. 2013)); *see Pratt v. Brennan*, No. 18-cv-04799 (KMK), 2020 WL 364195, at *5 (S.D.N.Y. Jan. 22, 2020) ("Simply stating that [p]laintiff 'experienced a hostile work environment' is not enough to plausibly allege a hostile work environment claim, as the Court 'need not credit her mere conclusions that a hostile work environment . . . has existed and been pervasive' at [her workplace]." (quoting *Salas v. N.Y.C. Dep't of Investigation*, 298 F. Supp. 3d 676, 681 (S.D.N.Y. 2018))); *Johnson v. City of New York*, No. 23-cv-05378 (JMF), 2024 WL 3520474, at *5 (S.D.N.Y. July 24, 2024) ("The fact that [plaintiff] subjectively experienced his work environment as abusive is not enough to state a hostile work environment claim."). Therefore, Plaintiff's hostile work environment claims is dismissed.

## V. Leave to Amend

Finally, Plaintiff has asked for leave to amend the Complaint should the Court grant Defendants' motion to dismiss. *See* Opp. at 1, 6, 8. Defendants do not acknowledge that request and, in their Reply, maintain that the Complaint should be dismissed with prejudice. *See* Reply at 8. The Court will deny leave.

District courts generally should not dismiss a *pro se* plaintiff's complaint "without . . . granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Chavis*, 618 F.3d at 170); *accord Wynder v. Goltzer*, No. 24-cv-07925 (GHW), 2025 WL 2207248, at *7 (S.D.N.Y. Aug. 3, 2025). However, "a court need not grant such leave

if the proposed amendment . . . would be futile." *Medina v. Tremor Video, Inc.*, 640 F. App'x 45, 47 (2d Cir. 2016) (summary order). "Amendment is futile where the problems with the complaint's claims are 'substantive' and not the result of 'inartful' pleading." *Biswas v. Rouen*, 808 F. App'x 53, 55 (2d Cir. 2020) (summary order) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

The problems here are substantive and cannot be addressed by amendment. Indeed, amendment could not remove the election-of-remedies bar on Plaintiff's NYSHRL claims. *See Solomon v. Amazon.com, Inc.*, 838 F. App'x 638, 639 (2d Cir. 2021) (summary order) (affirming dismissal without leave to replead of NYSHRL claim barred by election of remedies doctrine). Neither can amendment remove the bar on Plaintiff's federal claims imposed by her failure to bring this action within 90 days of the first EEOC right-to-sue letter, *see Geebro v. BPR 4000 LLC*, No. 17-cv-08287 (LGS), 2019 WL 652595, at *4 (S.D.N.Y. Feb. 15, 2019) (denying leave "to replead the Title VII claim" as "futile" where plaintiff failed to "timely commence this action after the denial of the related EEOC claim"); *cf. Powell v. Lab Corp.*, 789 F. App'x 237, 241 (2d Cir. 2019) (summary order) (affirming dismissal of *pro se* plaintiff's claims without leave to replead where those "claims were time-barred, and an amendment could not cure that deficiency"), or permit Plaintiff to assert her federal claims against the Individual Defendants, *see Bernheim v. N.Y.C. Dep't of Educ.*, No. 19-cv-09723 (VEC) (JLC), 2020 WL 3865119, at *9 (S.D.N.Y. July 9, 2020) ("[A]ny amendment to the ADA, ADEA, and Rehabilitation Act claims against the individual [d]efendants would be futile by virtue of the fact that those statutes do not provide for individual liability."), *report and recommendation adopted*, 2020 WL 4383503 (S.D.N.Y. July 31, 2020). Finally, read broadly, and as discussed in Section IV, *supra*, the Remaining Allegations are only that Plaintiff is a member of various protected classes and (1) received threats of discipline and termination, which are facially not adverse employment

actions; (2) was once suspended from work for refusing to allow her supervisor to conduct her performance evaluation, which is facially not discriminatory or retaliatory; and (3) experienced a hostile work environment as a result of these actions, which is implausible given that these actions are facially not discriminatory or retaliatory. There is no indication from these pleadings that there is a valid claim to be stated here, and indeed Plaintiff's requests for leave to amend neither articulated any proposed amendments nor otherwise suggested how Plaintiff would amend her pleadings. *See Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) ("[D]enial of leave to amend is proper 'where the request gives no clue as to how the complaint's defects would be cured.'" (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015))). In sum, the Court finds that Plaintiff's "[C]omplaint 'liberally read' [does not] suggest[] that [she] has a claim that she has inadequately or inartfully pleaded," *Cuoco*, 222 F.3d at 112 (alterations adopted) (citation omitted), and therefore the Court denies the request for leave to replead.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss, and Plaintiff's Complaint is dismissed with prejudice. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 11 and CLOSE this case.

Dated: August 31, 2026
New York, New York

SO ORDERED.

Jennifer Rochon
JENNIFER L. ROCHON
United States District Judge